Lewis E. Byrd, III,                                    Case No. 17-CV-191-JDP

    Plaintiff,

V.

Brandon Arenz,

    Defendent.

---

Response To Defendent's Brief
for Summary Judgment.

1. Officer Arnez's use of force was Constitutionally Reasonable as a matter of Law.

Response: Disputed: Defendent Arnez claims that Mr. Byrd was convicted of Three felonies by a plea of guilt. Mr. Byrd was only convicted of Two felonies and a misdemeanor. Two counts of "ATTEMPTING" to flee or elude a traffic officer and a "misdemeanor" of reckless driving. Mr. Byrd does have an appeal pending for these charges. In the plea Mr. Byrd only admitted to disregarding the visual or audible signals of a marked police car see Defendents exhibit 2 page 7 sentences 5 and 6. And a "misdemeanor" of Reckless driving. See Defendents exhibit 1 page 2 paragraph 5. None of these charges constitutes the use of DEADLY FORCE.

    Mr. Byrd did have a warrant out of the state of Minnesota for a "probation violation" for failure to keep

contact with his probation ~~officer~~ offence. The ~~office~~ offence in which Mr. Byrd was on probation for accured in "2005". A "Probation Violation" warrent also does not constitute the use of "DEADLY FORCE".

Mr. Byrd was traveling at a speed of 2.5 miles an hour. See Defendents Brief page 3 paragraph 2. Although Mr. Byrd did disregard the visual and or Audible signal of a police vehicle this can hardly be considered a HIGH-SPEED chase. Mr. Byrd was in a very rural part of the state and was only looking for a place where he would feel safe to pull over for police. Mr. Byrd was looking for a business or apartments where there would be witnessess to him surrendering to officers. When Mr. Byrd saw the Hilsboro Equipment and that a civilian had pulled over also. Mr. Byrd felt alittle better and pulled over for officer Arnez. Mr. Byrd pulled over several feet behind the civilian vechicle and STOPPED his vechicle. Thus, ending any alleged pursuit. Unknow to Byrd officer Kruger was coming around the bend in the road ~~but~~ a high rate of speed appearently he had stopped further down the road to assist another officer and was now trying to catch up to Byrd and rearended Byrds 2013 Lexus GS 350 causing Mr. Byrds vechicle to lung forward from the impact. Mr. Byrd was dazed by the impact of Krugers vechile rearending him. Mr. Byrd then observed Arnez pointing his gun at the windshield of Mr. Byrds vechile right at him. Mr. Byrd fearing for his life ducked below the steering wheel of the vechicle. See Defendents Exhibit 1 page 3 paragraph 2. At this point Arnez open fired on Mr. Byrd. Defendent Arnez says

in his reports that he stepped into the eastbound lane in front of Mr. Byrd's vechicle. Mr. Byrd did not manuver his vechile to point at Defendent Arnez. Defendent put himself in any harms way that could of occured. Mr. Byrds vechile was hit in 8 places out of the 11 bullets that were discharged from Defendent Arnez's Glock 22 pistol. Mr. Byrd's vichile was hit once in the following places: On the hood; just below and behind the left head light; in the right headlight; through the passenger side window edge; just behind the back passenger window; In front of the back right tail light; into the back right tail light; into the back window, on the right edge. See plaintiffs exhibit 2 page 2 of 2 paragraph 7. One of those bullets made it into the passenger compartment of the vechile and struck Mr. Byrd in the left arm. See plaintiffs exhibit 3 page 1 and 2 last sentence of page 1 continued onto page 2, and Defendents exhibit 6 page 2 of 3 paragraph 4 titled "skin".

    Mr. Byrd asked for dash cam video, body cam video or any audio of the shooting. The Defendent claims he did not operate the dash cam in the squad properly and was not able to get any of the shooting Recorded. He was only able to record the events that happened after the shooting See plaintiffs exhibit 2 page 2 of 2 paragraph 4. Officer Kruger also states that he also does not have any recordings of his claims that Mr. Byrd rammed his squad car. See plaintiffs exhibit 2 page 1 of 2 paragraph 4. Or Deputy William Zirks squad car eather See plaintiffs exhibit 2 page 1 of 2 paragraph 4. One would wonder why NONE of these officers have any footage of the shooting or the officers claims that Mr. Byrd rammed officers Krugers squad car. It would

lead a jury to believe that Mr. Byrd's version of the events are truthfull and that the officers involved are hiding evidence that doesn't work in their favor. If officers where in a "High speed" chase as they say, one would assume that these officers would have dash cams rolling and body cams on. But it is odd that only the footage that is significant in this case ie the shooting of Mr. Byrd, the rearending of Mr. Byrds car, the breaking of Mr. Byrd's arm are missing.

Mr. Byrds arm was twisted and fractured at the elbow by Officer Arnez. Mr. Byrd was not resisting arrest see Defendants exhibit 1 page 3 paragraph 3. Mr. Byrd put his hands in the air displaying no injury and complied with officers orders and allowed Defendant Arnez to handcuff him. At that point Defendant Arnez used so much force in placing Mr. Byrds arms behind Mr. Byrds Back that he twisted Mr. Byrds arm at the elbow and fractured it. The Fracture never healed and Mr. Byrd is now in the process of preparing for surgery to have his elbow replaced. Defendant Arnez exceeded the force reasonably necessary to apprend Mr. Byrd for a probation violation by shooting Mr. Byrd and Breaking Mr. Byrds arm. Mullenix-v-Luna No. 136 S.Ct 305, 193 L.Ed. 2d 255, 2015 U.S. Lexis 7160, 84 U.S.L.W. 4003  No. 14-1143

Disputed: In th Alternative, Officer Arnez Is Entitled to Qualified Immunity.

Response: Officer Arnez Is not Entitled to Qualified

immunity. Defendent Arnez is no longer a police officer after having resigned after the shooting of Mr. Byrd. Mr. Byrd was only wanted for a probation violation. The force used against Mr. Byrd was unreasonable. Deadly force did not have to be used to prevent Mr. Byrds escape for a probation violation. Defendent Arnez justifies his use of excessive force stating that he was concerned about the saftey of a crowd of people at a tractor pull over 3 miles away. There was no "IMMEDIATE" threat to any one for Defendent Arnez to shoot at Mr. Byrd. See Defendents exhibit 9. (Note) the Hillsboro Equipment is where Mr. Byrd was shot not the location where Defendents is claiming.) The Distance from where Mr. Byrd was shot and where the Hillsboro firemans memoral park where the tracktor pull was located is what looks to be about 5 miles. Mr. Byrd was not anywher near this event to be any kind of a threat.

Officer Kruger after rearending Mr. Byrds car suffered no injuries. His air bag deployed. See Plaintiffs exhibit 5. page 2 paragraph 4. Officer Krugers report. Defendent Arnez was a "Part-Time" officer with the Hillsboro Police Department at the time of the shooting. Defendents did not show any thing of the record that pertains to Defendent Arnez's police Trainging or Department policy that supports Defendents rights to use Deadly Force in this situation. There were other remedies available that Defendent Arnez could of used instead of Deadly force. Mr. Byrd was unarmed and was not a suspect in any crime. Although officers did try to justify the shooting and the chasing of Mr. Byrd by saying that they thought the car Mr. Byrd was driving was stolen. See Plaintiffs exhibit 1 paragraph 1. However Mr. Byrd is the legal and registered owner of both the

Red" Buick his girlfriend Saqwant Butcher was driving and the "Red" Lexus that Mr. Byrd was driving. Officers were looking for the car that Mr. Byrds girlfriend was driving. Officers stumbled upon Mr. Byrd seeing that it matched the discription of the other vechile that officer were initally in persuit of. Byrds girlfriend Saqwant Butcher was arrested and charged with fleeing or eluding an officer. See plaintiffs exhibit 2 page 1, Top of the page. Saqwant Butcher is listed under other currently in the Juneau county jail. Junneau county is where all this started. How could Mr. Byrd end up all the way in Hillsboro. Officer Arnez was not responding to any chase of Byrd. There was a chase in Juneau county toward Union center, Wisconin that Deputy Zirk was dispatched to, then they were cleared because that car was apprehended. This vechile was Byrd's girlfriend. Paragraph 3 goes on to say that that was a second vechile (Mr. Byrd) driving a Red Lexus that has MN plates and out of state warrant for a probation violation. Byrd was not in any high speed chase as this report clearly clearifies. That vechile was operated by some one else and that person was appreheneded prior to any police contact with Mr. Byrd. Although both cars are registered to Byrd, Byrd was not driving the car that was in the chase. See plaintiff exhibit 6 page 1 paragraphs 2 and 3.

To survive summary judgment the non-movent must merely show that "reasonable minds could differ as to the import of the evidence" Mr. Byrd ask this court to Denie Defudants motion of summary judgment and set this matter for trial.

Dated: 12/3/17                                             By. Lewis E. Byrd III