Lewis Byrd,                                    Case No. 17-cv-191-JDP
    Plaintiff,

V.

Brandon Arenz,                    Plaintiff's Brief in opposition of
    Defendant,                         Summary Judgment.

    The above-entitled action is before the court on Plaintiff's motion in opposition for summary judgment. In this matter, Defendant Officer Brandon Arenz, asserts that he did not violate Mr. Byrd's rights under the Fourth and Fourteenth Amendments of the United States Constitution by using excessive and deadly force to effect Mr. Byrd's arrest. There was no high speed chase as Defendant claims, there were no injuries to any officers or bystanders, and those attending a community festival were more than 3.5 mile away and were in no way in any immediate danger, that would cause for the use of excessive or even deadly force. Defendant officer Brandon Arenz's actions were not constitutionally reasonable as a matter of law under Supreme court and Seventh Circuit precedent. The court should dismiss Defendants summary judgment and set the case for trial.

## Undisputed Facts

    On August 13, 2016 Officer Brandon Arenz discharged his firearm eleven times at Plaintiff Mr. Lewis Byrd. (Byrd, Ex.4 pg.2 par 6.) Officer Arenz has not had a handgun qualification course since 6.19.14, making him

unqualified to use a handgun. (Byrd, EX.15, pg.1.) Officer Brendon Arenz is mandated by the Wisconsin Law Enforcement Standards Board, WI. Stat. 165.85 to have ANNUAL firearm qualification recertification training and he has failed to do so. (Byrd EX.14) On 9.18.16, a month after the shooting of MR. Byrd and the braking of MR. Byrds arm, Officer Arenz resigned as a police officer with the Hillsboro Police Department (Byrd EX.15. Pg.2.) As a result of MR. Byrds injuries, MR. Byrd had to have reconstructive surgery on his right arm. (Byrd EX.10). Plaintiff MR. Byrd did not resist arrest and complied with Officer Arenz's orders so there was no need for Defendent to use such force. (Byrd EX.9 pg.6.) Eight of the eleven bullets fired at MR. Byrd by Defendent struck MR. Byrd's vechile, several of them in the back window and trunk area. (Byrd EX.4 pg.2 par.2) One of those eight bullets struck MR. Byrd in the left arm injuring MR. Byrd. (Byrd EX.9 pg.6 par.7) Officer Arenz was asked by another officer if Defendent had shot MR. Byrd and noticed MR. Byrd was bleeding. (Byrd EX.9 pg.3-4 par.3) After that Officer Arenz was transported to the hospital due to the fact that he discovered he came into contact with MR. Byrd's blood. (Byrd EX. 9 pg.5 par.5) Officer Arenz advised that he continued firing at MR. Byrd because he was in fear for the saftey of a group of people at a tractor pull over 3.5 miles away. (Byrd EX.4 pg.2 par.2 and EX.5 map.) MR. Byrd did not accelerate his vechile towards anyone, his vehicle was on a down slop of a hill and Rolled forward down the hill under its own power after being rearended by officer Krugers squad. (Byrd EX.5 and EX.3 pg.2 par.3) There is conveniently for the Defendent no dash cam video available from Officer Krugers squad to support either parties claims. (Byrd EX.4 pg.1 par.4) There is no dashcam video of any alleged high speed chase MR. Byrd is said to be involved in. (Byrd EX.4 pg.1 par.4)

There is no radar of Mr. Byrds speed supporting Defendents claims that Mr. Byrd was traveling 80-90 miles per hour. (Byrd Ex.4, pg 4, number 6.) There are no medical records for officer Kruger supporting any injuries to him. (Byrd Ex.4, pg 5, number 12.) Officer Arenz was not injured, and only went to the hospital because he came into contact with Plaintiffs blood after shooting Plaintiff. (Byrd Ex 9, pg 5, par 5.) There are photographs of Mr. Byrd's vehicle that display the assault that was placed on him by Defendent Arenz. But Defendent can not produce the photos. (Byrd Ex 4, pg 2, par 8.) There is also a list of potential witnesses that Defendent fails to produce (Byrd Ex 7, pg 1, par 5.) Mr. Byrd denies ever driving at a high rate of speed even at sentencing. (Byrd Ex.1, pg 2, Sentence 20-23.) Mr. Byrds girlfriend Saguant Butcher was driving the Red Buick registered to Mr. Byrd that police were looking for, and she was arrested for the high speed chase in union center in Juneau county WI. (Byrd Ex 2, par 2-3 and Ex. 4, pg 1, par 3) The information given to officers was that the suspect vehicle was a red Buick and that the vechile was stolen. (Byrd Ex.8, pg 2, par.2.) Mr. Byrd was driving a 2013 Lexus. (Byrd Ex.8, pg 3, Item 1.) Mr. Byrd was almost rammed by officer William Zirk and had to drive into a ditch to aviod being hit by the officer. (Byrd Ex.4, pg.1, par.4.) There is no dash cam video from officer Zirks squad even though it was equipt with a dash camera. It did not have any footage of him attempting to ram Plaintiff's vehicle or as officer Zirk claims the Plaintiff trying to ram him. (Byrd Ex.4, pg 1, par 4.) There are 3-D scans of the scene of the shooting of Mr. Byrd. But Defendent fails to again produce the evidence. (Byrd Ex.4, pg.2, par 8-9.) There is also no video of the shooting even though dash cams and body cams

were available. (Byrd EX 4, pg. 2, par. 4.) MR. Byrd was unarmed and never had any weapon at any time. MR. Byrd committed no crimes and was not in any commission of any offences for officers to pursue him as they did. MR. Byrd was wanted for a parole violation for failure to keep contact with his probation/parole Agent. (Byrd EX. 8, pg. 5, bottom section under charges.) This is not a offence to pursue some one as he did or to use Deadly Force. The offence MR. Byrd was on standard supervised release for accured in 2005. Excessive and Deadly Force were not neccissary. Officer Arenz who was not qualified to use a handgun in the first place had no right to use the force he did on MR. Byrd (Byrd EX. 15, pg 1)

## Argument

1.) Officer Arenz's use of force was not constitutionally reasonable.
"When an officer believes that a suspects actions [place] him, his partner, or those in the "Immediate" vicinity in imminent danger of death or serious bodily injury, the officer can reasonably excercise the use of deadly force". Sherrod v. Berry, 856 F.2d 802, 805 (7th Cir 1988). However this is not the case in Byrd v. Arenz. Defendent does not show any evidence that the plaintiff was the one who caused the threat. Other than being wanted for a probation violation for failure to keep contact with his agent. Plaintiff didn't commit any crime. Plaintiff was pulled over on the side of the road and was rearended by a pursuing squad car. Officer's fail to produce any dash cam video of the incedent, and claim Plaintiff backed into the squad. The Defendent officer Brandon Arenz, says in a statment to investagators that he fired on the Plaintiff

continuencly because he was in fear for the safty of a group of people over 3.5 miles away at a tractor pull. 3.5 miles away is not in the "immediate vicinity" as stated in Sherrod v. Berry, 856 F.2d 802, 805 (7th cir. 1988.)

If Defendent officer Arenz fired his weapon while the car was driving away from him, he was not in imminent danger of death or serious bodily injury. See Ellis, 999 F.2d 247 (7th cir. 1993) "when a officer faces a situation in which he could justifably shoot, he does NOT retain the right to shoot at any time there after with impunity." Arenz claims that the citizens he was protecting were 3.5 or more miles away at the time he was firing his weapon as the vechile was rolling away down the hill. When Mr. Byrd's vechile was rearended by officer Krugers squad it was severely damaged, and was only coasting down the small hill at a very slow pace. Even if there was some one standing within the vicinty of the vehicles path, a reasonable officer may not have concluded that they were in imminent danger, or that the group of people at the tractor pull 3.5 miles away were in the immediate vicinity and in immenent danger.

Because material factual disputes exsist in the excessive force issue, the court must deny summary judgment and set the case for trial.

11. Officer Arenz is not Entitled to Qualified Immunity.

Arenz was not qualified to use a handgun under WI stat. 165.85. He was not current on his handgun Annual recertification. Defendent Arenz's last handgun qualification certification was

on 6.19.14. And his police records don't reflect any such training for handgun qualifications since. Which means Defendent Arenz was not qualified to use a handgun in the line of duty, Therefor making him not qualified for qualified Immunity. Defendent also resigned as a police officer after only 30 day of the shooting. Mr. Byrd was only wanted for a probation violation, for an offence commited in 2005. The force against Mr. Byrd was unreasonable, deadly force did not have to be used to prevent Mr. Byrd's escape for a probation violation.

Defendent Arenz Justifies his use of excessive force by shooting at Mr. Byrd as the vechile rolled away because he was concerned about the safety of a crowd of people at a tractor pull over 3 miles away. There was no immediate threat to thoughs people over 3 miles away for officer Arenz to continue firing as Mr. Byrds vechile was rolling away from him. (See Byrds Ex. 5 map)

Officer Kruger after rear-ending Mr. Byrd's vehicle suffered no injuries. Defendut fails to produce any medical record per plaintiffs discovery request. Mr. Byrd was unarmed and not a suspect in any crime. Although officers tried to justify the shooting and chasing of Mr. Byrd by saying that they thought Mr. Byrds car was stolen. Officers also mixed up Mr. Byrds vehicle and the vechile Mr. Byrds girlfriend Saguant Butcher was driving. Both cars are red with tinted windows. Officers where in a high speed chase with the girlfriends car as the reports indicate and stumbled across Mr. Byrds vechile matching the same discription and also registered to Mr. Byrd. Mr. Byrd did not pose any immediate

threat. "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." Tennessee v. Garner, 471 U.S. 1, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)

Mr. Byrd has met the burden of showing the court that "reasonable minds could differ as to the import of the evidence" in order for him to survive summary judgment.

Mr. Byrd ask this court to Deny Defendants motion of summary judgment. And acknowledge that there is a genuine dispute of the facts and set the case for trial.

## Conclusion

Mr. Byrd did not lead officers on a high speed chase. There is no evidence of any high speed or even a "chase" except as a matter of figure of speech. Mr. Byrd was rear ended by an officers squad car. Defendant fails to produce any evidence to support his claim that Mr. Byrd drove in reverse and hit the squad. The shooting of the plaintiff was not constitutionally justified because there was no imminent danger to the people who where at the tractor pull because they were not in the immediate vicinity. They were over 3.5 miles away. As Defendant continued to fire the force he used was excessive. And Defendant had no need to break Plaintiffs arm while handcuffing causing Mr. Byrd to have reconstructive surgery. Officer Arnz firearm qualifications is out dated.

Dated: 4/4/18                                        signed: [signature]