Lewis Byrd,
    Plaintiff,

v.

Brandon Arenz,
    Defendant.

Case No. 17-CV-191-JDP

## Response to Defendents findings of facts

1) On August 13, 2016 Mr. Byrd was driving in wisconsin after absconding from supervised release from minnesota.

    Response: undisputed.

2) When Juneau county, wisconsin law enforcement came into contact with Mr. Byrd, he commenced a high speed chase.

    Response: Disputed; Defendent fails to provide any supporting evedince of the speed Mr. Byrd was traveling. Mr. Byrd denies traveling at any high rate of speed at plea/sentencing hearing. See exhibit 1 pg 2 sentences 20-23; Defendent fails to produce any evidence even upon Mr. Byrd' discovery request for radar of Mr. Byrd's speed.

3) At 7:03 pm Vernon county Deputy Sheriff william zirk was dispatched to assist while Mr. Byrd was proceeding from Elroy, wisconsin on highway 80.

    Response: Disputed; Mr. Byrd's girlfriend was driving a similar car to Mr. Byrd's, same color, tinted windows. Reports state that she was in a

highspeed chase in union center wisconsin and was arrested for those charges. The vehicle she was driving was registed to mr. Byrd. see exhibit 2 para. 1. Defendent failed to produce arrest reports of Saquant Butcher mr. Byrd's girlfriend. mr. Byrd did request this information in discovery.

4.) At that time, officer Todd Kruger of the Elroy Police Department, was pursuing mr. Byrd in a squad car with emergency lights activated.

Response: Disputed; officer Kruger was following behind mr. Byrd at a distance and did not have his lights activated. See exhibit 3 pg 1. para. 2, 3, 4.

5.) mr. Byrd pulled over to the southbound lane at approximately 2.5 miles hour.

Response: Disputed; Defendent failed to produce any radar of mr. Byrds speed. when officers activated their emergency lights mr. Byrd pulled over and stopped his vehicle. At that time officers attempted to ram mr. Byrds vehicle.

6.) Deputy Zirk pulled forward towards the southbound shoulder, attempting to force mr. Byrd further off the shoulder, But mr. Byrd swerved as if to ram the deputies vehicle and then speed away, towards union center.

Response: Disputed; Deputy Zirk pulled forward towards mr. Byrds stopped vehicle attempting to ram mr. Byrd and force mr. Byrd's vehicle to drive off the shoulder and into a ditch as mr. Byrd AVOIDED being rammed by Deputy Zirk. Defendent fails to produce any dash cam video from

this officers squad car. MR. Byrd did ask for such production in his request for discovery. Was told by defendant there is none. See exhibit 4 paragraph 4.

7.) Then MR. Byrd led the highspeed chase through the village of union center at speeds in excess of 80-90 miles per hour.

Response: Disputed; Defendant fails to produce any radar of MR. Byrd's speed or dashcam video in support of these claims. MR. Byrds girlfriend, the driver of another vechile registered to MR. Byrd was the one identified and arrested for the highspeed chase in union center. Not MR. Byrd. In addtion to speed radar and dash cam video, MR. Byrd also request in discovery the reports of sarguant Butchers arresst and noneof these were made available in discovery by defendant. See exhibit 2, paragraph 2 and 3.

8.) MR. Byrd made a right hand turn at the intorsection of highway 80 and highway 33, and proceeded down highway 33 towards Hillsboro in the wrong lane of travel.

Response: Disputed; MR. Byrd was in the correct lane of travel. Defendant has no dash cam video, or witness statements to support their claims. MR. Byrd did request dashcam video and witness statements in discovery, of Deputy Zirks squad, and from the couple whos vechile Deputy Zirk collided with.

9.) An elderly couple that was traveling on highway 33 towards the highway 80 intorsection was forced to swerve into the left lane to avoid a head on collision with MR. Byrd.

Response: Disputed; The elderly couple and MR Byrd where in each others correct lane of traffic. MR. Byrd asked for dash cam video from Deputy Zirk's squad

in his discovery request and none were available nor were there any statements from the couple or accident reports as request by mr. Byrd in his discovery request.

10) Deputy Zirk swerved to avoid the couples vehicle, but was unable to completely avoid it and sideswiped the vehicle.

Response: Disputed: Defendant was unable to supply any dashcam video or statements from the couple, there is no evidence in support of defendents claims, on how the incedent took place. See exhibit 4 paragraph 4.

11) Deputy Zirk abandoned the chase to see to the vehicle he had struck

Response: Disputed: Defendent offers no video, accident reports or witness statements from the couple. Mr. Byrd did request these in his request for discovery

12) Officer Kruger continued the pursuit down highway 33 towards Hillsboro.

Response: undisputed

13) That evening there was a tractor pull taking place at the Hillsboro fireman's memorial park.

Response: undisputed.

14) Defendant officer Brandon Arenz was assisting Vernon county with crowd control at the tractor pull when the dispatcher advised him of mr. Byrd's progress.

Response: undisputed.

15) Officer Arenz retrieved a squad car and proceeded to the southside of highway 33, across from the entrance to the Hillsboro Equiptment, Inc.- less than three miles from Hillsboro proper.

Response: Disputed: the Hillsboro fireman's memorial park is more then three miles, it is like 4-5 miles away. see exhibit 5.

16) Officer Arenz exited his squad car to set up spike strips on the road, when he observed mr. Byrd's vehicle approaching on the west bound lane of traffic.

Response: Disputed: There is no video from dashcam to support Defendet claims, of these events.

17) A civilian vehicle pulled out into highway 33 from the turn off to Hillsboro Equipment and mr. Byrd stopped his vehicle.

Response: Disputed: A civilian drove around mr. Byrd's vehicle on highway 33 passing mr. Byrd on mr. Byrd's drivers side, puting the civilian in the oncoming traffic lane in a passing zone, The civilian now was in front of mr. Byrd's slow traveling vechile. The civilian pulled over on the west bound shoulder because he was suddenly confronted with officer Arenz. mr. Byrd had then pulled over behind the civilian vehicle and mr. Byrd stopped his vehicle. mr. Byrd asked Defendent in discovery request for witness statements from the civilian driving this vehicle mr. schumer and no statements were available. see exhibit 4 pg.1 top of page title heading witnes

18.) Mr. Byrd put his vehicle in reverse and backed into the squad car driven by Officer Kruger who was still in pursuit, and inflicted severe damage to the squad car.

Response: Disputed: Officer Kruger was coming around a downhill left corner at a high rate of speed, came upon Mr. Byrd's vehicle along with the civilian vehicle and officer Arenz's squad car pulled over and stopped. Officer Kruger was trying to come to a stop but it was too late. Officer Kruger rearended Mr. Byrd's 2013 Lexus GS350, causing serious damage to both vehicles. Defendant will not or cannot supply dash cam video, witness statements or the accident reinactment reports done by Investagater from the Wisconsin State Patrol Traffic Reconstruction unit, and the 3D scan of Officer Kruger's squad and Mr. Byrd's vehicle. See exhibit 4 page 3 paragraph 9, Exhibit 4 page 1 paragraph 4. States "Officer Kruger's squad was not equipped with a squad camera and had no video, Deputy Zirk did have squad video, however it only shows the short part he was involved in." See exhibit 4 page 3 paragraph 5. States no video that is beneficial in providing evidence directly related to the shooting, Exhibit 7 page 1 paragraph 5 states "that there was a list of names of potential witnesses." Mr. Byrd asked for this list and any statement that may of been made by them in Mr. Byrd request for discovery was told none exsist. Also see exhibit 6 paragraph 4. Mr. Byrd did ask for photo's in his discovery request but was told by Defendent that no are available. But exhibit 4 page 3 paragraph 8 say's that there are.

19.) The collision injured Officer Kruger who was later transfered by ambulance to a nearby hospital.

Response: Disputed: Officer Kruger was transported to the hospital to get checked out. But he had no injuries, Mr. Byrd requested medical records for Officer Kruger, but was told by Defendant that none were available. Defendant does not show any evidence of injury to Officer Kruger.

20) Mr. Byrd then steered his vehicle around the civilian vehicle, into the oncoming traffic lane, where upon Officer Arenz stepped into the lane, drew his service weapon, and ordered Mr. Byrd to stop.

Response: Disputed: Mr. Byrd's vehicle was lunged forward from the impact of being rear ended by Officer Kruger's vehicle, and was forced into the opposite lane of traffic. At that point Officer Arenz stepped in front of Mr. Byrds vehicle drew his service weapon and began to fire several shots at Mr. Byrd. Defendant fails to produce any witness statements from civilian or dash cam video. This is when Mr. Byrd was shot see exhibit. 9 page 6 number (7).

21) Mr. Byrd accelerated his vehicle at Officer Arenz who fired several shots at Mr. Byrds on coming vehicle.

Response: Disputed: Mr. Byrds vehicle was on the down slop of a hill when it was rear ended by Officer Krugers squad and when it was pushed into the opposit lane of traffic where Officer Arenz stepped in front of Mr. Byrd's now moving vehicle from the impact from being rearended by Officer Krugers squad. Mr. Byrds vehicle coasted down the hill under its own power from the impact, as Mr. Byrd was being shot at several times by Officer Arenz. Officer Arenz was able to fire several shots into the front hood of Mr. Byrds car aswell as the headlights, the passenger side window pane, the rearend (rear window, trunk area, tail light,) as Mr. Byrd's

~~Resents~~

vehicle was coasting down the hill past him. No video or witness statements provide to Mr. Byrd from Defendent upon Mr. Byrd's Discovery request. See exhibit 4 page 2 paragraph 7.

22) Officer Arenz dodged Mr. Byrd's vehicle, and fired several shots as Mr. Byrd fled, attempting to stop the immediate threat.

Response: Disputed: Defendent Advises that the reason he fired so many shots and continued firing as Mr. Byrds vehicle passed was that he was in fear for the safety of the people 4 miles away at the tractor pull that was big help at the Firemans memorial park 4 miles away. There was no immediate threat to justify him shooting at Mr. Byrd as Mr. Byrd's vehicle was rolling down the hill. See exhibit 4 page 2 paragraph 2 second to last sentence.

23) As he approached the intersection of Highway 33 and county road WW, Mr. Byrd stopped his vehicle and continued to flee on foot over an embankment.

Response: Disputed: Mr. Byrds vehicle suffered severe damage from being rearended and was coasting down the hill. when Mr. Byrds vehicle reached the bottom of the hill it came to a rolling stop. At that point Mr. Byrd noticed he was shot in the left ~~his~~ elbow where a bullet hit him and Mr. Byrd got out of his Immobile vehicle. See exhibit 3 page 2 paragraph 3 sentence 1, exhibit 9 Page 3 paragraph 3, exhibit 9 page 5 last paragraph.

24) Officer Arenz pursued of foot, and when he crested the embankment, drew his service revolver and directed Mr. Byrd to stop.

Response: Disputed: Officer Arenz drew a Glock 22 semi-automatic pistol on Mr. Byrd. A Glock 22 is believed to fire 40 cal. bullets, see exhibit 8 paragraph 3 second sentence. Officer Arenz was not qualified to use a handgun. Officer Arenz's last record of handgun qualification was on June 19, 2014, see exhibit 15. According to the Wisconsin Law Enforcement Standards Board Stat. 165.85 each officer shall complete a handgun qualification course ANNUALLY for recertification training to show handgun proficiency, and ability to operate and fire a handgun. See exhibit 14. Officer Arenz's Handgun Qualifications are expired and not valid at the time of the shooting of Mr. Byrd. Officer Arenz's Handgun Qualifications were expired 26 months prior to the shooting of Mr. Byrd over 2 yrs past the last handgun qualifications he had done on June 19, 2014. And he quit a month later. ~~Arenz~~ ~~~~~~~~

25.) Mr. Byrd complied with the instructions, raising his hands and getting on his knees.

Response: Undisputed.

26.) Officer Arenz handcuffed Mr. Byrd and escorted him back up the hill and handed him over to a Juneau County deputy.

Response: Disputed: When handcuffing Mr. Byrd Officer Arenz used so much force in twisting Mr. Byrd's RIGHT arm that Officer Arenz caused a non-union fracture to the radius head. Mr. Byrd also suffered from abrasions on the right side of his face. See exhibit 9 page 2, page 3 paragraph 3.

27.) Mr. Byrd was then transfered by ambulance to St. Joseph's Hospital in Hillsboro.

Response: undisputed

28.) An x-ray disclose a radial head fracture on Mr. Byrd's right elbow.

Response: undisputed.

29.) This type of injury commonly occurs as a result of a fall with an out streetched arm.

Response: Disputed: Mr. Byrd did not fall and no where in officer Arenz's reports did he state that Mr. Byrd had fallen. Mr. Byrd had suffered multiple injuries one being a non union fracture of his right elbow which is different than a common radial head fracture. Mr. Byrd had to have reconstructive surgery do to this injury. See exhibit 10. Mr. Byrd also suffered a gunshot wound that was covered with a bandage on his left arm and abraisions on the right side of his face from officer Arenz. See Exhibit 4 page 3 paragraph 2 sentence 2, exhibit 9 page 2 paragraph 1, and exhibit 9 page 6 number (7).

30.) On April 5, 2017, Mr. Byrd pled guilty to two felony charges of attempting to flee or elude a traffic officer and one felony charge of reckless driving causing injury stemming from the case.

Response: Disputed: Mr. Byrd pled guilty to two felony charges of attempting to flee or elude a traffic officer and one "MISDERMEANER" of reckless driving causing injury. Not a felony see exhibit 11.

31.) At the plea hearing Mr. Byrd admitted to the accuracy of the facts as recited in the criminal complaint.

Response: Disputed: Mr. Byrd never admitted to any responsibility involved with officer Kruger rearending Mr. Byrds vehicle and Mr. Byrd denied ever driving at a hight rate of speed. see exhibit 1 page 2 sentences 20-23. There were amendments to the original complaint see exhibit 13 sentences 1-3. clearing Mr. Byrd of any endangerment to officer Kruger or anyone else. That is why Mr. Byrd only pled guilty to the attempting to elude charges and the misdermeaner of reckless driving. see exhibit 11.

32.) Mr. Byrd was assisted by counsel at the hearing and had sufficient time to fully discuss the ramifications of his plea with his attorney.

Response: Disputed: Mr. Byrd was represented by counsel, but did not feel he was sufficient in assisting Mr. Byrd. Mr. Byrd did file a complaint against his counsel to the supreme court of Wisconsin, office of lawyer regulation in madison WI. Mr. Byrd also filed an appeal with the court of appeals, see exhibit 12.

33) The circuit court of Vernon County, Wisconsin held that MR. Byrd provided a sufficient factual basis of the plea, and that MR. Byrd had made his plea knowingly, intelligently, and voluntarily.

Response: Disputed: MR. Byrd denied driving at any high rate of speed. See exhibit 1 page 2 sentences 20-23. And MR. Byrds Lawyer answered the question about the plea being knowingly, intelligently and voluntarily. The question was not answered by MR. Byrd or ever addressed to MR. Byrd. But to MR. Byrds Lawyer. See Exhibit 13.

34) Accordingly, the circuit court convicted him of three charges.

Response: Disputed: MR. Byrd denies driving at any high rate of speed. See ex. 1 pg 2 sentences 20-23.