EXHIBIT 4

# INCIDENT REPORT
## NARRATIVE

| AGENCY NAME: MONROE COUNTY SHERIFF | ORI #: WI0420000 | REPORT DATE: 8/13/2016 7:26:00 PM | CASE NUMBER: 2016-0923 |
|---|---|---|---|

SPENCER REPORT

MCSO Case #2016-0923
Hillsboro PD Case #- 16-0304
Juneau County Case #- 16-08166
Vernon County Case # 16-0810

Suspect: Lewis Edward Byrd III
▓▓▓▓▓▓/1977 (m/b)
Currently in Vernon County Jail

Other: Sagwant Butcher
12/8/1982 (F/I)
Currently in Juneau County Jail

Witness: George E Shumer
▓▓▓▓▓/1950 (m/w)
N10257 22nd St East
Necedah WI 54646
608-565-2946

para. 1.
On 08/13/2016 at approximately 8:10pm I, Detective Jeffrey Spencer, was contacted by Deputy Von Ruden. Deputy Von Ruden advised that there had been a vehicle pursuit and officer involved shooting in Vernon County and they were requesting an outside agency investigate.

para. 2.
I responded to Hwy 33 near Co Rd WW where the incident had occurred. This location is between Hillsboro and Union Center. The location is just inside Vernon County near the Vernon/Juneau County line. Upon arrival I met briefly with Deputy Ryan Williams with Monroe County Sheriff's Office, who had come to assist in securing the scene. I was advised that the officer involved shooting occurred at the location just inside Vernon County, and the vehicle that was involved was approximately ¼ mile up the road. During the course of my investigation I found the following information.

para. 3.
Shortly after 6:00pm on 08/13/2016 multiple officers were advised of an erratic driver on County Hwy A near Hwy 80 in Juneau County. The vehicle that they were looking for was a 2013 Lexus with MN plate of 370KTR. The registered owner, Lewis E Byrd III, had a warrant out of Minnesota and a caution indicator advising of prior fleeing from police. State Patrol had attempted to located the vehicle, however while trying to catch up to the vehicle, it evaded the officers. While trying to locate the vehicle Juneau County Deputy Michael Sickinger located a different vehicle that was also registered to Byrd. They attempted to stop this vehicle, however it did not stop until it was presented with tire deflation devices in the road. The driver stopped just before the tire deflation device and was taken into custody. The driver was identified as Sagwant Butcher (who was later identified as Byrd's girlfriend).

para. 4.
A short time later civilian, who had been listening to the scanner observed the 2013 Lexus with MN plates in Hillsboro. They followed the vehicle and contacted police. The vehicle traveled to Union Center, then north to Elroy. Once in Elroy, Officer Todd Kruger observed the 2013 Lexus turn around and head back south out of Elroy. Officer Kruger followed the vehicle and waited for additional units before attempting to stop the vehicle. Deputy Zirk, with Vernon County Sheriff's Office, positioned his vehicle just north of Union Center. When Officer Kruger observed Deputy Zirk's vehicle ahead he attempted to stop the vehicle. Officer Kruger activated his emergency light (no siren) however the vehicle did not stop. Deputy Zirk (who had his lights active) pulled his squad into the southbound lane in the path of the Lexus. The Lexus had to swerve onto the shoulder of the road to avoid Deputy Zirk's vehicle. Deputy Zirk turned his car around and began pursuing the Lexus, with his lights and siren activated. The Lexus accelerated ahead and Deputy Zirk pursued the vehicle into Union Center where it turned west onto Hwy 33. When Deputy Zirk made the turn onto Hwy 33 his vehicle struck another vehicle and he was unable to continue pursuing the vehicle. Officer Kruger continued to pursue the vehicle on Hwy 33. I later spoke with Officer Kruger who advised that his squad car was not equipped with a squad camera, and therefore he did not have any video of the incident. Deputy Zirk did have squad video, however it only shows the short part of the pursuit that he was involved in.

para. 5.
Officer Brandon Arenz was working in Hillsboro at the tractor pull event. When he heard that the vehicle was headed towards Hillsboro he picked up a squad and headed towards Union Center. Officer Arenz stopped his squad car on Hwy 33 near E18873. Officer Arenz's squad was facing EB, on the shoulder of the EB lane, with emergency lights activated. According to Officer Arenz, he exited his vehicle and carried his spike strips to the shoulder of the WB lane in preparation for the suspect vehicle to arrive at his location. As the suspect vehicle was coming into sight, a vehicle being driven by George Schumer pulled out of Hillsboro Equipment. Schumer started to go WB and then observed Officer Arenz and his vehicle up ahead. Schumer did not know what to

| SPENCER, JEFFREY | 7 | 8/25/2016 9:23:11 AM |
|---|---|---|
| OFFICER | ID | DATE |

Exhibit 4 100¶

UU 020

ARENZ0098




# INCIDENT REPORT NARRATIVE

| AGENCY NAME: MONROE COUNTY SHERIFF | ORI #: WI0420000 | REPORT DATE: 8/13/2016 7:26:00 PM | CASE NUMBER: 2016-0923 |
|---|---|---|---|

SPENCER REPORT

1) do so he slowed and came to a stop near Officer Arenz. Schumer realized that Officer Arenz was looking at the suspect vehicle coming up behind him.

2) The suspect vehicle stopped behind Schumer's vehicle, was put in reverse and accelerated backwards, and struck Officer Kruger's squad which was coming to a stop. The suspect vehicle struck Officer Kruger's vehicle, causing severe damage to the front end and set off the air bags. The vehicle then went into the oncoming lane, and began going WB in the EB lane to get around Schumer's vehicle. According to Officer Arenz, he was yelling for the vehicle to stop and he moved into the EB lane as the suspect came towards him. Officer Arenz advised he observed the driver of the vehicle lean over into the passenger seat as the vehicle headed towards him. Officer Arenz advised he feared for his life and began firing at the vehicle as it came at him. Officer Arenz moved to his left, as the suspect vehicle went past him. Officer Arenz advised that he continued to fear for the safety of the large group of people at the Hillsboro tractor pull so he continued to fire at the vehicle as it drove away. Officer Arenz fired several more times as the vehicle sped away.

3) Officer Arenz advised that retrieved the spike strips and moved them to the ditch line. He then got in his squad and began pursuing the suspect. Officer Arenz advised that as he made the curve up ahead he observed the suspect exit his vehicle and begin running on foot, across the road and into the ditch on the EB side of the road. Officer Arenz exited his squad and ran to the edge of the ditch line. He observed the suspect and ordered him to stop. At this time of suspect stopped and was taken into custody.

4) I asked Officer Arenz if he had any video of the incident. He advised that when he started going to the incident the video camera was still starting up and therefore was not activated initially. Officer Arenz said that after the shooting he got back to his squad and manually started the camera, which caused it to have a short period of pre-record, however he did not know if it recorded any of the shooting. I later reviewed the video and found that the video only captures from the time that Officer Arenz is bringing the tire deflation device back to the ditch and then the events that occurred after that.

5) Officer Arenz turned his gun over to Sgt. Patrick Clark from Hillsboro Police, who in turn turned it over to Sgt. Winchel with Vernon County. Sgt Winchel later turned the gun over to me. The gun had 4 bullets in the magazine and 1 that had been ejected from the gun while making it safe.

6) After speaking with Officer Arenz I did a walk-through of the scene and later collected evidence. I found that there were 3 bullet casings in the road and 1 one the EB shoulder. I found that there were 6 casings in the WB shoulder. I found that all 3 of the casing that were in the roadway were damaged. I also found that Officer Arenz had fired 11 rounds (he believed he had his gun fully loaded with and 15 round magazine plus 1 chambered in the gun). The location of the bullet casings were consistent with what Officer Arenz said occurred. Due to the fact that there were only 10 casings located, it is possible that a casing became wedged in a vehicle's tire prior to the road being closed down. We also located 1 fragment of a bullet in the roadway.

7) In examining the vehicle I located 8 places where it appeared the vehicle had been struck by bullets. The vehicle had been struck once each in the following locations. In the right headlight; On the hood of the car near the front middle part of the hood; Just below and behind the left headlight; Through the passenger side window edge; Just behind the back passenger window; In front of the back right tail light; Into the back right tail light; Into the back window, on the right edge. There was no clear indication that any of the rounds made it into the passenger compartment of the vehicle. There was, however, a scratch and crack near on the front center console, however it was unclear if the damage occurred from or prior to the shooting.

8) While on scene, I did take photographs and conduct searches of both Officer Kruger, and Officer Arenz's squad car, but found nothing of evidentiary value.

9) Investigator Michael Marquardt from State Patrol came to the scene and later to impound to document the scene. In doing so he mapped out the location of the evidence that was located, as well as later did a 3-D scan of Officer Kruger's squad and the suspect's vehicle. See his report for further detail.

10) On 08/16/16 I met with Byrd at the Vernon County Jail. I explained to Byrd what my part of the investigation entailed and I read him his rights. While reading Byrd his rights, and after his rights were read, Byrd was very contemplative as to whether or not he wanted an attorney. I asked him multiple times if he was asking for an attorney, but he would not directly answer if he was or wasn't. I told Byrd that I would let him go back and think about it, and find out what happened at court (as he had court scheduled for later that day), however he advised that he didn't want to lose the opportunity to talk to me now. Byrd would then talk in circles and give little bits of information. Byrd was very concerned about his girlfriend, Butcher. I advised him that she was ok and was in custody in Juneau County. Byrd advised that she didn't do anything wrong and didn't understand why she was arrested. I explained that she fled from the police in her vehicle. Byrd advised that he was on the phone with her when she was being pulled over and that she did pull over. I asked if he could see them when she was pulled over and he said that he couldn't. Byrd advised

| SPENCER, JEFFREY | 7 | 8/25/2016 9:23:11 AM |
|---|---|---|
| OFFICER | ID | DATE |




# INCIDENT REPORT NARRATIVE

| AGENCY NAME: MONROE COUNTY SHERIFF | ORI #: WI0420000 | REPORT DATE: 8/13/2016 7:26:00 PM | CASE NUMBER: 2016-0923 |
|---|---|---|---|

SPENCER REPORT

1) that they had gotten separated and he was trying to find her. I asked Byrd what they were in the area for and he advised that they were going to go to the casino in Wisconsin Dells, but when they got there, Butcher wanted to get something to eat, and didn't want to eat at the casino. Byrd advised they were trying to find something for lunch, and Butcher then decided that she didn't want to go to the casino at all so they were going to go back to Minnesota. When I told him this didn't make sense he said it didn't to him either, but it was what Butcher wanted and he wasn't going to argue with her.

2) Byrd asked me what it was that I wanted to know. ==We did talk about Byrd's injuries, as he had a bandage on his left elbow and sling on his right arm.== Byrd indicated that his arm was broken and the bandage was covering his elbow that had been bleeding. Byrd advised he did not know how he got the injuries and did not know if he had been struck by any gunfire. Byrd said he may have broken the arm when he fell. I asked him when he had fallen and he advised he did not know. I asked Byrd if he had been on any drugs or alcohol, and he said that Butcher is good and doesn't do any of that. Byrd then added that he doesn't either. Byrd did talk a little about the incident. Byrd advised that he was driving and saw the officer was trying to pull him over, or maybe the car in front of him so he stopped. Then another officer told him to back up so he did, and then he said it all went to hell so he went up ahead and that was it. I told Byrd that he wasn't making any sense and not being honest with me, as he knew he had a warrant and was clearly trying to run from them. Byrd again changed the subject and wouldn't admit to any wrongdoing. After Byrd continued to do this throughout the interview, we ended the interview and I left him my card, if he wanted to talk to me about what happened or had anything else he wanted me to know.

3) After speaking with Byrd I executed a search warrant on his vehicle. During the search of the vehicle I found further evidence of criminal acts that had been going on. On the floor board of the driver seat I located pepper spray. I also located a cell phone that was under the seat. On the floorboard of the passenger seat I located a large purse. Inside the purse I found a drug kit with syringes (new and used), a tourniquet, and metal cooking containers commonly used with cooking drugs before injection. I also located a container that had residue around the cover that tested positive for methamphetamine. I also located a plastic container with a label indicating a prescription from California for 1 "pre-roll". The name on the prescription was only "Richard". The container was empty except for residue that tested positive for THC. Also in the purse was a cell phone and paper with account information for escort websites. There was also another bottle of pepper spray in the purse. A receipt in the back of the car showed that they had been at McDonalds in Madison, WI on the morning of 08/13/16. I also found a large amount of clothing that indicated they had been on, or going to go on, a trip that had lasted much longer than just a day.

4) The cell phone that was under the driver seat appeared to belong to Byrd and only had a few messages on it from Butcher showing they had been traveling together and the he wanted her to keep up with him while they were driving.

5) I received other items from both Juneau and Vernon County including some squad video and dispatch transmissions. Some of the dispatch transmission correlate directly to the incident, however there was ==no video that was beneficial in providing evidence directly related to the shooting.==

6) The reports and disks collected are attached to this report.
Forward to Vernon County DA's office for review and any additional charges.
End of Report

Detective Jeffrey Spencer
MCSO                #7

[Handwritten annotations in margins: "What were these items?", "Did he find my glasses", "How convenient that the shooting videos are missing", "This guy told me he was acting as internal affairs investigating any police misconduct."]

| SPENCER, JEFFREY | 7 | 8/25/2016 9:23:11 AM |
|---|---|---|
| OFFICER | ID | DATE |

4b:   See Arenz attached service records and notice of resignation dated 9/18/16.

5. All reports, transcripts, notes, radar of speed, and arrest records of Sgt. Butcher who was driving a red 2007 Buick with Minnesota plates registered to Mr. Byrd and was apprehended in Juneau County for a high-speed chase through Union Center shortly before Mr. Byrd's arrest.

RESPONSE:   None in the possession of this answering Defendant.

6. Radar of speed for the Red 2013 Lexus that Mr. Byrd was driving, to determine Mr. Byrd's speed at the time of the shooting.

RESPONSE:   None in the possession of this answering Defendant, and/or known to this Defendant.

7. Any and all eyewitness statements, dispositions and law enforcement notebook and other written entries concerning the events, including but not limited to, George Shumer, the civilian that pulled over at the scene of the shooting, and the unnamed witness who entered Mr. Byrd's vehicle to put it into park.

RESPONSE:   See attached police reports. See Arenz documents (00093-00182).

8. Any and all photos, videos, and 3-D images made of the scene of Mr. Byrd and Officer Kruger's squad, including accident reports, any investigation reports done by the Wisconsin State Patrol traffic reconstruction units, and any and all reports by all agencies involved.

RESPONSE:   None known to this answering Defendant, other than

the previously produced dash cam video and the photographs of Officer Kruger's squad car in Defendants Motion for Summary Judgment. Discovery continues.

9. Any and all reports and records of phone calls, text, emails and any and all other forms of communication to the DCI (Department of Criminal Investigations) pertaining to the investigation of this case.

RESPONSE: None in the possession of this answering Defendant, and/or known to Defendant. Discovery continues.

10. Any and all reports and records of forensic reports pertaining to the investigation of the officer involved shooting of Mr. Byrd. Any reenactment reports, all photos, video of Mr. Byrd's vehicle.

RESPONSE: See Arenz documents (00093-00182).

11. Any and all data downloaded from Mr. Byrd's 2013 Lexus computer system.

RESPONSE: None in the possession of this answering Defendant.

12. Plaintiff's motion/request for medical records.

RESPONSE: None in possession of Defendant Brandon Arnez in regard to the request for medical records pertaining to Brandon Arenz and/or Elroy Police Officer Todd Krueger. Discovery continues.