UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF WISCONSIN

Lewis Edward Byrd, III,

      Plaintiff,

v.

Brandon Arenz,

      Defendant.

Civil Action No: 17-CV-191-JDP

**DEFENDANT'S RESPONSE TO
PLAINTIFF'S PROPOSED
FINDINGS OF FACT**

1.     On August 13, 2016 Officer Brandon Arenz discharged his firearm Eleven times at Plaintiff Mr. Lewis Byrd. *See* Ex. 4 pg 2 par 6.

     **Response:** Undisputed.

2.     Officer Arenz has not had handgun a qualification course since 6-19-14. *See Ex.* 15 pg. 1.

     **Response:** Disputed. Officer Arenz completed his statutory hand-gun recertification on June 9, 2016, and again on June 14, 2017, and was qualified to use the service weapon for the Fiscal Year July 1, 2016 to June 30, 2017, including the date of the incident on August 13, 2016. (Aff. Arenz, ¶ 2 & Ex.1.) The certification was maintained by a municipality other than Hillsboro, which is the reason it was not produced to Mr. Byrd with Officer Arenz's Hillsboro service records. (Aff. Arenz, ¶ 3.)

3.      Officer Brandon Arenz is mandated by the Wisconsin Law Enforcement Standards Board, WI stat 165.85 to have annual qualification recertification training and has failed to do so.

> **Response:** Disputed. Defendant does not dispute the requirement for annual recertification training. However, Officer Arenz completed his statutory recertification on June 9, 2016 and was qualified to use the service weapon on August 13, 2016. (Aff. Arenz, ¶ 2 & Ex.1.) The certification was maintained by a municipality other than Hillsboro, which is the reason it was not produced to Mr. Byrd with Officer Arenz's Hillsboro service records. (Aff. Arenz, ¶ 3.)

4.      On 9·18·16, a month after the shooting of Mr. Byrd officer Brandon Arenz resigned as a police officer with the Hillsboro Police Department. *See* Ex. 15 pg 2.

> **Response:** Undisputed. On September 18, 2016, Officer Arenz resigned his position with the Hillsboro Police Department.

5.      Mr. Byrd had reconstructive surgery on his right arm from his injuries.

> **Response:** Undisputed.

6.      Mr. Byrd suffered from a non-union radial head fracture, which is different from a common radial head fracture. *See* Ex. 10 pg. 1.

> **Response:** Disputed. The exhibit referenced in this proposed finding does not draw a distinction between a non-union radial head fracture and a common radial head fracture. Plaintiff does not lay foundation for his competence to testify as an expert regarding such a distinction.

2

7.     Mr. Byrd did not resist arrest and complied with Officer Brandon Arenz's orders. *See* Ex. 9 pg 6.

> **Response:** Disputed. Plaintiff was convicted of two counts of felony attempting to flee or elude a police officer. Doc. 26-2, at 11. Therefore, Mr. Byrd's contention that he did not "resist arrest" is unfounded. However, at the specific moment of his arrest, Mr. Byrd complied with a request by Defendant to stop. *See* Doc. 26-1, at 3.

8.     Officer Arenz broke Mr. Byrd's arm while arresting Plaintiff Mr. Byrd. *See* Ex.

> **Response:** Disputed. The evidence cited by Plaintiff does not draw a causal link between Plaintiff's radial head fracture and Officer Arenz. In other circumstances, Plaintiff has stated "he may have broken the arm when he fell." (Byrd Ex. 4, p. 3, at ¶ 2.) A radial head fracture is consistent with a fall with an outstretched arm. (Doc. 26-7, at 4 (St. Joseph discharge summary); *accord* Nick Pappas, M.D. & Joseph Bernstein, M.D., *Fractures in Brief: Radial Head Fractures*, 468 CLINICAL ORTHOPAEDICS & RELATED RESEARCH 914, 914 (2010) (Doc. 26-8).)

9.     Eight of the Eleven bullets fired at Mr. Byrd by officer Brandon Arenz struck Mr. Byrds vehicle. *See* Ex. 4 pg 2 par. 7.

> **Response:** Undisputed.

10.     One of those eight shots struck Mr. Byrd in the left arm injuring Mr. Byrd. *See* Ex. 9 pg 6 par. 7.

**Response:** Disputed. Plaintiff's own statement, as related in the cited passage, is hearsay when applied against Defendant. The records of Plaintiff's emergency room visit following his arrest do not disclose a gunshot injury. (*See* Docs. 26-6, 26-7.)

11.   Officer Brandon Arenz was asked by another officer if Defendant had shot Mr. Byrd and noticed Mr. Byrd was bleeding. *See* Ex. 9 pg 3–4 par. 3.

**Response:** Disputed. The other officer, not Officer Arenz noticed that Mr. Byrd was bleeding.

12.   Officer Brandon Arenz was then transported to the hospital due to the fact that he discovered he has came into contact with Mr. Byrds Blood. *See* Ex. 9 pg 5 par 5.

**Response:** Undisputed.

13.   Officer Brandon Arenz advised that he continued firing at Mr. Byrd because he was in fear for the safety of a group of people at a tractor pull over 3 miles away. *See* Ex 4 pg 2 par 2 and Ex 5 (map).

**Response:** Undisputed.

14.   Mr. Byrd's vehicle was on a down slop [sic] of a hill and rolled down the hill under its own power after being rearended by Officer Krugers vehicle. *See* Ex.5 and Ex. 3 pg 2 par. 3.

**Response:** Disputed. Although there was a downhill slope, Plaintiff offers no evidence in the record to substantiate his account. At his plea hearing, Mr. Byrd attested to the accuracy of the allegations in the criminal complaint

4

when entering the factual basis for his guilty plea. (*See* Doc. 26-2, at 10:18–22.) Mr. Byrd specifically admitted that during the police chase he came to a stop and then began driving again. (*See* Doc. 26-2, at 2:14–3:7). This event was the reason that Mr. Byrd was charged, pled guilty, and was convicted of two counts of attempting to flee or elude a police officer rather than a single count. *Id.*

15.   There is no dashcam video of Mr. Byrd allegedly ramming Officer Kruger's squad car. *See* Ex. 4 pg 1 par 4.

**Response:** Undisputed.

16.   These is no dashcam video of any alleged high speed chase Mr. Byrd was involved in with Officer William Zirk. *See* Ex. 4 pg 1 par 4.

**Response:** Disputed. The cited passage states: "Deputy Zirk did have squad car video, however it only shows the short part of the pursuit he was involved in."

17.   There is no radar evidence that Mr. Byrd was traveling at 80-90 miles per hour. *See* Ex. 4 pg 4 number 6.

**Response:** Undisputed.

18.   There are no medical records for Officer Todd Krueger supporting any injuries. Ex. 4 pg 5 number 12.

**Response:** Disputed. Officer Krueger is a nonparty. Defendant is not in possession of Officer Krueger's medical records, but that does not mean

that such records does not exist. Defendant has no obligation to obtain the records for Plaintiff.

19.    Officer Brandon Arenz was not injured, and only went to the hospital because he was in contact with Mr. Byrd's blood after shooting him. *See* Ex. 9 pg. 5 par 5.

> **Response:** Disputed. Plaintiff has not established that he was shot. The records of Plaintiff's emergency room visit following his arrest do not disclose a gunshot injury. (*See* Docs. 26-6, 26-7.) Defendant does not dispute the assertion that he was not injured.

20.    Photographs of Mr. Byrds vehicle were taken. *See* Ex. 4 pg 2 par 8 and Ex. 7 pg 1 par 5.

> **Response:** Undisputed.

21.    There is a list of witnesses that were given to Detective Spencer. *See* Ex. 7 pg 1 par 5.

> **Response:** Undisputed.

22.    Mr. Byrd denies ever driving at any high rate of speed. *See* Ex. 1 pg 2 sentences 20–23.

> **Response:** Disputed. Plaintiff relies on a representation of an attorney at his sentencing hearing, after he had already pled guilty to the charges against him. (*See* Byrd Ex. 1, at 2:20–23.) At his plea hearing, Mr. Byrd attested to the accuracy of the allegations in the criminal complaint when entering the factual basis for his guilty plea. (*See* Doc. 26-2, at 10:18–22.)

6

The criminal complaint indicated that Plaintiff drove at a high rate of speed. (Doc. 26-1, at 2–4.) In addition, Officer Kruger's affidavit attests to the fact that he was involved in a "high-speed chase that Plaintiff Lewis Edward Byrd, III initiated." (Aff. Kruger, Oct. 31, 2017, ¶ 2.)

23.   Mr. Byrd's girlfriend Sagwant Buthcer was arrested on Aug. 13, 2016 for a high speed chase in Union Center in Juneau County, WI. While driving a red vehicle registered to Mr. Byrd. *See* Ex. 2 par 2–3 and Ex. 4 pg 1 par 3.

**Response:** Undisputed.

24.   There are 3-D images that were scanned by WI. State Patrol of Mr. Byrd's and Officer Krueger's vehicles. *See* Ex. 4 pg 2 par 8–9.

**Response:** Undisputed.

25.   Mr. Byrd swerved his Lexus on to the shoulder of the road to avoid Deputy Zirks vehicle after Deputy Zirk pulled his into the southbound lane in the path of Mr. Byrd's Lexus. *See* Ex. 4 pg. 1 par. 4.

**Response:** Undisputed.

26.   There is no video of the shooting of Mr. Byrd even though dashcam and body cam video equipment was available. *See* Ex. 4 pg 2 par 4.

**Response:** Disputed. There is no video recording of Officer Arenz firing on Mr. Byrd's vehicle. However, the record indicates that the dashcam was still starting up at the relevant time, and therefore it was not "available." In addition, the record cited by Plaintiff does not indicate that a body camera was available to Officer Arenz.

7

27.    The information given was that the suspect vehicle was a red Buick and that the vehicle was stolen. *See* Ex. 8 pg 2 par 2.

Response: Undisputed, as to the information initially reported in the cited exhibit. The reported license plate was Minnesota No. 370KTR.

28.    Mr. Byrd's girlfriend Sagwant Butcher was driving a red Buick registered to Mr. Byrd. *See* Ex. 4 pg. 1 par. 3.

Response: Disputed. The record cited only indicates that Ms. Butcher was driving a vehicle registered to Mr. Byrd. It does not identify the make or color of the vehicle. The record cited indicates that Mr. Byrd was driving a 2013 Lexus with Minnesota license plate No. 370KTR.

29.    Mr. Byrd was driving a 2013 Lexus. *See* Ex. 8 pg. 3 item 1.

Response: Undisputed.

30.    There is body cam video from the scene. *See* Ex. 8 pg 3 item 10.

Response: Undisputed.

31.    Mr. Byrd was an unarmed suspect. Ex. 9 pg 6 number 7 or any reports.

Response: Disputed. Pepper spray was located in Plaintiff's vehicle when it was searched. Byrd Ex. 8, at p. 3, ¶¶ 2, 8.

32.    Mr. Byrd was on supervised release for an offense that occurred in 2005. Ex. 8 pg. 4.

Response: Disputed. At the time of his arrest, Plaintiff was *in violation* of the terms of his intensive supervised release for his 2011 Minnesota

conviction for criminal sexual conduct in the first degree. (Byrd Ex. 8, at 5; Doc. 26-5.)

33.    Mr. Byrd had committed no crimes and was wanted for nothing more than a parole violation for fail to contact his Probation/parole agent. Ex. 8, pg. 5. Section under charges.

   **Response:** Disputed. At the time Officer Arenz used deadly force to put an end to the high-speed car chase, Plaintiff had just committed two acts of felony attempting to flee or elude a traffic officer and one act of reckless driving causing injury to others. Plaintiff pled guilty to and was convicted of these charges. Doc. 26-2, at 11.

34.    There was vehicle information downloaded from Mr. Byrd's 2013 Lexus' computer system. Mr. Byrd did request this information in his discovery request and was told by defendant that there weren't none. Ex. 4, pg 5, number 11 and Ex. 3, pg. 5, Item number 1.

   **Response:** Disputed. Although the cited documents indicate this data was collected by the Monroe County Sherriff's Office, Defendant does not possess this data.

35.    Officer Arenz was not qualified to use a handgun at the time of the shooting of Mr. Byrd. Ex. 15, pg. 1 and Ex. 14, pg. 3–4.

   **Response:** Disputed. Officer Arenz completed his statutory recertification on June 9, 2016, and again on June 30, 2017, and was qualified to use the service weapon for the Fiscal Year July 1, 2016 to June 30, 2017, including the date of the

incident of August 13, 2016. (Aff. Arenz, ¶ 2 & Ex.1.) The certification was maintained by a municipality other than Hillsboro, which is the reason it was not produced to Mr. Byrd with Officer Arenz's Hillsboro service records. (Aff. Arenz, ¶ 3.)

Dated:  April 19, 2018                Lind, Jensen, Sullivan & Peterson
                                      A Professional Association


                                      s/Jason R. Prochnow
                                      Jason R. Prochnow #1034213
                                      Attorneys for Defendant
                                      1300 AT&T Tower
                                      901 Marquette Avenue South
                                      Minneapolis, Minnesota  55402
                                      (612) 333-3637
                                      jason.prochnow@lindjensen.com